# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOUTTE** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-787** |
| **UNITED PARCEL SERVICE, INC.** | **SECTION: "G" (4)** |

## <u>ORDER</u>

In this litigation, Plaintiff Randy Boutte ("Plaintiff") alleges that Defendant United Parcel Service, Inc. ("Defendant") fired him in retaliation for making a workers' compensation claim, denied him family leave during his employment in violation of federal law, refused him reasonable accommodations for a disability in violation of the Americans with Disabilities Act (ADA), intentionally inflicted emotional distress upon him, and breached the Labor Management Agreement between Defendant and the Teamsters Union.[1] Pending before the Court is Defendant's Rule 12(b)(6) Partial Motion to Dismiss, seeking dismissal of Plaintiff's ADA claim for failure to exhaust all administrative remedies and Plaintiff's claim for intentional infliction of emotional distress ("IIED") for failure to establish all elements required to state a claim.[2] On March 31, 2017, the Court granted Plaintiff's motion for voluntary dismissal of Plaintiff's ADA claim. Accordingly, the Court need only consider Defendant's partial motion to dismiss as to the IIED claim. Having considered the motion, the petition, the amended petition, the memoranda in support

---

[1] Rec. Doc. 1-3 at 2–3, 25–31.

[2] Rec. Doc. 9; Rec Doc. 9-1 at 3–10.

and opposition, and the applicable law, the Court will deny the motion without prejudice and grant Plaintiff leave to amend his complaint.

## I. Background

### A.    *Factual Background*

In his petition for damages, Plaintiff alleges that on or about December 3, 2014, Plaintiff suffered a work-related accident resulting in injuries to his back and shoulders.[3] Plaintiff further alleges that "shortly after [his] work accident, plaintiff's employment was terminated," because, Plaintiff contends, he filed a workers compensation claim.[4]

In his supplemental and amending petition, Plaintiff additionally alleges that from approximately June 2015 to November 2015, he requested unpaid family leave to attend to his ill wife multiple times and was denied by Defendant.[5] Plaintiff contends that pursuant to company policy and under federal law, there was no justification for the denial, because the request was properly made "with evidence of the justification."[6]

Plaintiff further alleges that because of his wife's illness and "the stress created by long hours of heavy lifting and long periods of driving," Plaintiff developed chronic spine pain.[7] According to Plaintiff, he repeatedly requested a limitation of his driving hours, but despite following proper procedures for making the requests and being entitled to the accommodation, his

---

[3] Rec. Doc. 1-3 at 2.

[4] *Id*. at 3.

[5] *Id.* at 25–26.

[6] *Id.* at 25.

[7] *Id.* at 26.

requests were denied.[8] Plaintiff alleges that from approximately December 2014 to December 2015, his back problems, caused by long hours of driving non-power steering trucks and heavy lifting, worsened.[9] Plaintiff alleges that despite the availability of power steering trucks and knowledge of Plaintiff's back problems caused by driving non-power steering trucks, Defendant denied Plaintiff's request to drive power steering trucks.[10]

Plaintiff avers that on December 3, 2015, his shoulder and back were "seriously aggravated" by a maneuver performed while driving a non-power steering truck.[11] Plaintiff alleges that Defendant has a procedure to employ injured workers who are available for light duty, but denied Plaintiff's request to be employed in a light duty capacity, despite medical evidence of his disability and physical limitations resulting from the December 3 injury.[12] Finally, Plaintiff alleges that in February 2016, although he was available for light duty employment, Defendant terminated his employment, citing poor attendance as the reason for termination.[13]

Plaintiff alleges that Defendant's denial of family leave, refusal to accommodate his physical limitations resulting from work-related injuries, continual harassment for allegedly insignificant technical violations of policy and false allegations of violation of policy, and subsequent termination were "all part of an intentional infliction of emotional distress."[14] Plaintiff

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at 27.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 28.

[14] *Id.* at 29.

specifically alleges that after he requested family leave and accommodation of his physical limitations, Defendant began a "systematic harassment" of Plaintiff by conducting "write ups" of false or insignificant violations "with the intent of intentionally inflicting emotional distress and as a precursor for termination of employment."[15]

Lastly, Plaintiff alleges that all of Defendant's actions were in violation of a Labor Management Agreement between Defendant and the Teamsters Union.[16] Plaintiff avers that the Teamsters Union failed to properly represent him and failed to initiate the proper grievance procedure, and therefore, Plaintiff is entitled to bring a cause of action against Defendant and the Teamsters Union.[17]

## B.    *Procedural Background*

On August 25, 2015, Plaintiff filed a petition for damages for retaliatory discharge against Defendant in the 24th Judicial District for the Parish of Jefferson, Louisiana.[18] On October 7, 2015, Defendant filed its answer and affirmative defenses,[19] and on January 6, 2017, Plaintiff filed a first supplemental and amending petition.[20] On January 30, 2017, Defendant filed a notice of removal, and the case was removed to this Court.[21] On February 27, 2017, Defendant filed a Rule 12(b)(6) partial motion to dismiss the Americans with Disabilities Act ("ADA") and intentional infliction

---

[15] *Id.*

[16] *Id.* at 30–31.

[17] *Id.*

[18] *Id.* at 2.

[19] *Id.* at 8.

[20] *Id.* at 25.

[21] Rec. Doc. 1.

of emotional distress claims.[22] On March 20, 2017, Plaintiff filed an opposition to Defendant's motion to dismiss as to the intentional infliction of emotional distress claim only. [23] On March 29, 2017, with leave of the Court, Defendant filed a reply.[24] Also on March 29, Plaintiff filed a voluntary motion for partial dismissal of Plaintiff's ADA claims,[25] which the Court granted on March 31, 2017.[26] On March 31, 2017, Plaintiff also filed an "opposition and incorporated surreply."[27]

## II. Parties' Arguments

### A. Defendant's Motion to Dismiss

In support of its motion to dismiss, Defendant argues that Plaintiff's allegations of Defendant's conduct are insufficient to raise a claim for intentional infliction of emotional distress ("IIED").[28] Defendant avers that to recover for IIED, a plaintiff must prove that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[29] Defendant

---

[22] Rec. Doc. 9.

[23] Rec. Doc. 13.

[24] Rec. Doc. 21.

[25] Rec. Doc. 17.

[26] Rec. Doc. 19.

[27] Rec. Doc. 21.

[28] Rec. Doc. 9-1 at 5. In its motion to dismiss, Defendant also argued that Plaintiff's claim under the ADA should be dismissed. *Id*. at 3–5. However, on March 31, 2017, the Court dismissed Defendant's ADA claim pursuant to Plaintiff's motion for voluntary dismissal. Rec. Doc. 19. As such, the Court need not address the parties' arguments regarding dismissal of the ADA claim.

[29] Rec. Doc. 9-1 at 5–6 (citing *White v. Monsanto Co.*, 585 So. 2d. 1205,1209 (La. 1991)).

cites the Louisiana Supreme Court opinion in *White v. Monsanto Co.* for the proposition that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[30] Defendant further avers that IIED cases "arising in the workplace are limited to situations where the distress is 'more than a reasonable person could be expected to endure' and the offending conduct is 'intended or calculated to cause severe emotional distress.'"[31] Defendant cites Louisiana state court cases, *Barber v. Marine Drilling Mgt., Inc.* and *Nicholas v. Allstate Ins. Co.* for the proposition that IIED cases "arising in the workplace" are rare and "will rise to the level of intentional infliction of emotional distress only in the most unusual of cases."[32] For "instructive" authority on the standard, Defendant cites several federal district court cases case, including *Dhillon v. Lincare, Inc.*; *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*; *Washington v. Davis*; and *Griffith v. State*;[33] and one Louisiana state court case, *Almerico v. Dale*;[34] all finding that the conduct did not rise to the level of extreme and outrageous. Accordingly, Defendant contends that the alleged conduct at issue does not reach the level of "extreme and outrageous" conduct required to assert a claim of IIED.[35]

---

[30] *Id.* at 6 (quoting *White*, 585 So. 2d at 1209).

[31] *Id.* (citing *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00); 765 So. 2d 2017, 1027).

[32] *Id.* at 6–7 (quoting *Barber v. Marine Drilling Mgt., Inc.*, No. 01-1986, 2002 WL 237848, *8 (E.D. La. Feb. 15, 2002) and *Nicholas*, 765 So. 2d at 1022, 1027).

[33] *Id.* at 7–9 (citing *Dhillon v. Lincare, Inc.*, No. 06-1822, 2008 WL 2920259 (W.D. La. June 19, 2008), *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*, No. 05-1504, 2007 WL 2480358 (W.D. La. Aug. 30. 2007), *Washington v. Davis*, No. 01-1863, 2001 WL 1287125 (E.D. La. Oct. 23, 2001), and *Griffith v. State*, 808 F. Supp. 2d 926, 929-932, 934-37 (E.D. La. 2011).

[34] *Id.* at 9–10 (citing *Almerico v. Dale*, 05-749 (La. App. 5 Cir. 3/28/06), 927 So. 2d 586).

[35] *Id.* at 7–10.

## B.     *Plaintiff's Opposition to Defendant's Motion to Dismiss*

In opposition, although Plaintiff agrees with Defendant's characterization of the elements required to assert an IIED claim, Plaintiff notes that "[t]he defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered." However, Plaintiff also acknowledges that the actor's knowledge that his conduct will be perceived as insulting or hurtful is not enough.

Plaintiff contends that, as in his case, "a pattern of deliberate, repeated harassment in the workplace may indeed constitute intentional infliction of emotional distress."[36] Plaintiff alleges that Defendant intentionally subjected Plaintiff to repeated harassment for at least eight months.[37] Plaintiff further contends that "even mild harassment over time could rise to the level of extreme conduct."[38] Accordingly, Plaintiff avers that he has sufficiently stated a claim upon which relief can be granted.[39] Plaintiff points out that even in *Dhilon v. Lincare, Inc.* and *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*, two cases in the Western District of Louisiana cited by Defendant, the respective courts held that the facts alleged were sufficient to state a claim, even though the claims were ultimately unsuccessful.[40] In this case, Plaintiff argues, the facts alleged are at least sufficient to survive a motion to dismiss.[41]

---

[36] [36] Rec. Doc. 13 at 5–6, 9 (citing *White*, 585 So. 2d. at 1209).

[37] *Id.*

[38] *Id.* at 10 (quoting *Gilpin v. Elmer Candy Corp.*, No. 99-1475, 2000 WL 713195 at *4 (E.D. La. 2000) (internal quotation marks omitted)).

[39] *Id.*

[40] *Id.* (citing *Dhilon v. Lincare, Inc.,* No. 06-1822, 2008 WL 2920259 (W.D. La. 2008); *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*, No. 05-1504, 2007 WL 2480358 (W.D. La. 2007)).

[41] *Id.* at 10–11.

In the alternative, Plaintiff argues, the Court should grant Plaintiff leave to amend his petition to state a claim upon which relief can be granted.[42] Plaintiff asserts that additional facts exist that may be pertinent to this action.[43] For example, Plaintiff states that his wife has interstitial cancer and has become disabled.[44] Plaintiff further states that he had a perfect record until he expressed a need for leave to care for his disabled wife and "to attend to his own work-related injuries."[45] Plaintiff also describes specific incidents that took place between the Defendant and himself after requesting leave. For example, Plaintiff states that "[t]hey consistently rummaged through his truck every morning, looking for any reason to discipline him;" they would consistently single him out and "write him up" for insignificant infractions or fabricate violations; and on one occasion, "Plaintiff's supervisor called and cursed his wife out exclaiming that he needed to be at work to meet the quotas."[46]

Plaintiff also states that after his injuries were "exacerbated by his inadequate working conditions, he was again denied leave pursuant to the Louisiana worker's compensation act or accommodation pursuant to the ADA."[47] According to Plaintiff, his supervisor "told him he did not believe he was hurt and explained that he improperly coded his work leave so he would not receive the worker's compensation benefits."[48] In addition, Plaintiff states that his supervisor did

---

[42] *Id*. at 13.

[43] *Id.*

[44] *Id.* at 14.

[45] *Id.*

[46] *Id.*

[47] *Id*.

[48] *Id*.

not accept his doctor's note and told him not to return to the premises until he was released to full duty, and then, according to Plaintiff, his supervisor terminated him for poor attendance.[49] Plaintiff avers that after he was terminated, he suffered a nervous breakdown requiring hospitalization in a mental institution more than seven times.[50] Plaintiff further avers that he has since lost his house to foreclosure "for failure to take workmen's compensation."[51] In light of these additional facts, Plaintiff requests leave to amend his petition.[52]

## C.     *Defendant's Reply*

In its reply, Defendant argues that Plaintiff "essentially conced[ed] he has no ADA claim," presumably because Plaintiff voluntarily dismissed his ADA claim, and therefore it was improper for Plaintiff to include allegedly being denied an accommodation pursuant to the ADA as part of his IIED claim.[53] Accordingly, Defendant concludes that "these allegations cannot constitute an IIED claim as a matter of law."[54]

Defendant further alleges that Plaintiff improperly attempts to enlarge the scope of his amended petition by including allegations in his opposition that are not contained in the petition or amended petition.[55] Regarding the merits of Plaintiff's claim, Defendant asserts that "severe emotional stress" must be more than a reasonable person would be expected to endure, contrary to

---

[49] *Id*. at 14–15.

[50] *Id*. at 15.

[51] *Id*.

[52] *Id.*

[53] Rec. Doc. 16 at 2.

[54] *Id.*

[55] *Id.* at 3.

Plaintiff's assertion that "the defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered."[56] Finally, Defendant contends that because conflict in the workplace is "not ordinarily actionable," and Plaintiff has not alleged facts more egregious than those in similar cases dismissing IIED claims, there is no possibility that Plaintiff can prevail, and Plaintiff's claim should be dismissed.[57]

## D.    *Plaintiff's Sur-reply*

Plaintiff avers that he does not seek to enlarge the scope of his amended petition, and the additional allegations that Defendant points to are "only examples of what will be added, if Plaintiff is allowed to amend his petition."[58] Plaintiff contends that his claim is distinguishable from the claim in *Washington v. Mother Works, Inc.*, a case in the Eastern District of Louisiana cited by Defendant, because the plaintiff in *Washington*, who missed work to care for an ill family member, was never denied protected leave.[59] Finally, Plaintiff alleges that "unlike any of the cases cited by Defendant, the pattern of harassment alleged by Plaintiff was substantive in duration, frequency and volume," and therefore sufficient to support a claim of IIED.[60]

---

[56] *Id.*

[57] *Id.* at 4–5 (citing *Almerico v. Dale*, 05-749 (La. App. 5 Cor. 3/28/06); 927 So. 2d 586; *Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572-573 (E.D. La. 2002)).

[58] Rec. Doc. 21 at 3.

[59] *Id*. at 4.

[60] *Id.*

### III. Law and Analysis

#### A.    *Legal Standard on Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[61] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[62] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[63] "Factual allegations must be enough to raise a right to relief above the speculative level."[64] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[65]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[66] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[67] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[68] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[61] Fed. R. Civ. P. 12(b)(6).

[62] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[63] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[64] *Twombly*, 550 U.S. at 556.

[65] *Id.* at 570.

[66] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[67] *Iqbal*, 556 U.S. at 677–78.

[68] *Id.* at 679.

statements" will not suffice.[69] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[70] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[71] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[72] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[73]

## B.    *Analysis*

In the motion to dismiss, Defendant argues that the alleged conduct at issue does not reach the level of "extreme and outrageous" conduct required to support a claim for IIED.[74] Plaintiff alleges that because Defendant intentionally subjected Plaintiff to a pattern of repeated harassment at his employment, Defendant's actions constitute extreme and outrageous conduct, and Plaintiff has therefore successfully stated a claim for IIED.[75]

As both parties agree, to prevail on an IIED claim, Plaintiff must show that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe;

---

[69] *Id.* at 678.

[70] *Id.*

[71] *Id.*

[72] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[73] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[74] Rec. Doc. 9-1 at 10.

[75] Rec. Doc. 1-3 at 29–30.

and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[76] A claim for IIED requires a plaintiff to allege extreme and outrageous conduct.[77] "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[78] "Merely tortious or illegal conduct does not rise to the level of extreme and outrageous."[79]

Although activity in the Louisiana workplace environment can give rise to a cause of action for IIED, "this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time."[80] The Louisiana Supreme Court described the type of conduct that could give rise to a meritorious claim of intentional infliction of emotional distress in *White v. Monsanto Co.*:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."[81]

In the motion to dismiss, Petitioners cite four federal district court cases and one Louisiana state court case to illustrate that Defendant's alleged conduct does not reach the level of "extreme

---

[76] *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir.2007) (citing *White*, 585 So. 2d at 1209).

[77] *White*, 585 So. 2d at 1209.

[78] *Id.*

[79] *W.T.A. v. M.Y.*, 2010-839 (La. App. 3 Cir. 3/9/11); 58 So. 3d 612, 616.

[80] *King v. Bryant*, 2001–1379, pp. 3–4 (La.App. 3 Cir. 7/10/02); 822 So.2d 214, 217.

[81] *White*, 585 So.2d at 1209 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

and outrageous" conduct required to support a claim for IIED. [82] Examples of conduct in the workplace that courts found did not reach the level of extreme and outrageous conduct required by law include the following:

1. Alleged harassment over the course of several months due to an employee's marriage to a native of India, including offensive and repetitive name calling and one instance in which a male co-worker physically kicked the plaintiff in the buttocks and told her to "get her a— to work."[83]

2. Alleged constant rude and sexual comments over the course of approximately one year made by a co-worker to the plaintiff and other women regarding their physical appearances and a humiliating comment about a marketing picture the plaintiff had selected, as well as alleged retaliation resulting in termination after the plaintiff complained about sexual harassment.[84]

3. Alleged harassment, retaliation, and creation of a hostile work environment, including the defendant slamming doors and throwing objects in the plaintiff's presence, after the plaintiff, who was the former General Counsel for New Orleans Public Schools, reported her findings on two employee disability discrimination claims against the School Board. The plaintiff also alleged that the defendant had her escorted from the building, brought

---

[82] Defendants also cite *Barber v. Marine Drilling Mgt., Inc.* for the proposition that "conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of outrageous conduct." Rec. Doc. 9-1 at 6 (citing No. 01-1986, 2002 WL 237848 (E.D. La. 2002)). However, in *Barber*, the court found that the complaint was devoid of any allegations of fact and only set forth legal conclusions, which are not sufficient to state a claim.

[83] *Dhillon v. Lincare, Inc.*, No. 06-1822, 2008 WL 2920259 (W.D. La. June 19, 2008).

[84] *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*, No. 05-1504, 2007 WL 2480358 (W.D. La. Aug. 30, 2007).

false charges against her, instructed her staff to have no contact with her, stripped her of all administrative authority, redistributed the Office of General Counsel's furniture, fixtures, and supplies, including the plaintiff's personal items, and placed her on administrative leave.[85]

4. Alleged sexual harassment over the course of approximately three years, inappropriate sexual remarks, creation of a hostile work environment, abusive work conduct, including having checks thrown at the plaintiff, accusations of misplacing checks, and accusations of exceeding her authority, and eventual termination after the plaintiff filed an EEOC charge.[86]

5. Alleged disrespectful and insensitive comments, placement of the plaintiff on administrative leave while plaintiff was making funeral arrangements for his father, termination of plaintiff for policy violations (later rescinded because termination was not in good faith), warning the plaintiff that he would be placed in an inferior employment role, failure to act on the plaintiff's requests for reimbursements, and assigning the plaintiff to a night shift in order to cause distress while the plaintiff was awaiting the birth of his first child. The plaintiff also alleged that his employer had undertaken to undermine his authority, impose unrealistic deadlines, and generally make him uncomfortable for retaliatory purposes and, or, to force the plaintiff to leave his employment.[87]

Plaintiff, in turn, cites *White v. Monsanto* and three additional Louisiana state court cases for the proposition that a pattern of deliberate, repeated harassment may indeed constitute

---

[85] *Washington v. Davis*, No. 01-1863, 2001 WL 1287125 (E.D. La. Oct. 23, 2001).

[86] *Griffith v. State*, 808 F. Supp. 2d 926 (E.D. La. 2011).

[87] *Almerico v. Dale*, 05-749 (La. App. 5 Cir. 3/28/06); 927 So. 2d 586.

intentional infliction of emotional distress. According to Plaintiff, examples of patterns of repeated harassment that were sufficient to support a claim for IIED include the following:

1. Alleged daily incidents of verbal and physical sexual harassment by a co-worker over two year period, which the plaintiff's supervisor and union representative allegedly not only knew about and failed to take any action in response thereto, but actually encouraged.[88]

2. Alleged continual inaction by employer concerning complaint of sexual harassment.[89]

3. Alleged long-term campaign of harassment by a law professor of his student, including the law professor calling the student a "slut."[90]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[91] Based on the facts Plaintiff has alleged, his claim for IIED is a plausible one. Plaintiff alleges that Defendant's denial of family leave to Plaintiff, refusal to accommodate his physical limitations resulting from work-related injuries, continual harassment for allegedly insignificant technical violations of policy and false allegations of violations of policy, and subsequent termination, were all part of a systematic pattern of harassment amounting to extreme and outrageous conduct, sufficient to constitute a claim for IIED, as recognized by the Louisiana Supreme Court in *White v. Monsanto*.[92] Additionally, Plaintiff cites several examples in which state courts have held that a pattern of

---

[88] *Bustamento v.Tucker*, 607 So.2d 532 (La. 1992) (finding that the defendant's conduct constituted a pattern of harassment actionable under a claim for IIED for the purpose of determining whether plaintiff's claims were proscribed).

[89] *Martin v. Bigner*, 665 So.2d 709 (La. App. 2 Cir. 1995) (conduct at issue could constitute IIED for purposes of surviving an exception of no cause of action).

[90] *Smtih v. Atkins*, 622 So.2d 795 (La. App. 4 Cir. 1993).

[91] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[92] Rec. Doc. 1-3 at 29–30; Rec. Doc. 13 at 2–3, 6 (citing *White*, 585 So. 2d at 1209).

harassment may constitute IIED, which raises Plaintiff's right to relief based on Defendant's alleged pattern of harassment "above the speculative level."[93]

None of the cases Defendant cites defeats the court's "reasonable inference" that Defendant is liable for the misconduct alleged.[94] The conduct at issue in each of those cases, although carried out in the workplace, is not so analogous to Defendant's alleged conduct in this case to establish as a matter of law that Defendant's conduct does not rise to the requisite level of extreme and outrageous conduct. Of the five examples, two involve sexual harassment and two involve offensive or disrespectful remarks made to the plaintiff, neither of which form the basis of Plaintiff's IIED claim in this case. The remaining case involves retaliation against the plaintiff for making determinations regarding certain claims submitted by employees, rather than for submitting claims to the employer, as is the case here.

Furthermore, in two of those cases, the plaintiffs sufficiently stated an IIED claim upon which relief could be granted, i.e., survived a motion to dismiss.[95] Instead, the court in each denied the IIED claims on motions for summary judgment.[96] In another, although confirmed by the appellate court, a concurring judge wrote to make clear that "this case is being dismissed because a no cause of action review is based on the pleadings and not the allegations asserted in plaintiff's briefs." The concurring judge further opined that additional facts alleged in the brief regarding the procurement of false testimony against the plaintiff through a bribe, "if properly plead, would . . . constitute a cause of action for intentional infliction of emotional harm." Moreover, although the

---

[93] *Twombly*, 550 U.S. at 556.

[94] *Id.* at 570.

[95] *Dhillon*, 2008 WL 2920259; *Bradford*, 2007 WL 2480358.

[96] *Id.*

court in each of the cases cited ultimately found that the conduct at issue was insufficient to support a claim for IIED, none of the cases present an "insuperable bar to relief" that would warrant dismissal at this stage.[97]

While Plaintiff sufficiently alleges in the petition for damages and amended petition for damages that Defendant's conduct was extreme and outrageous, Plaintiff asserts additional facts in the opposition that, if permitted consideration (by the Court granting leave to amend the petition), would bolster Plaintiff's claim that Defendant's conduct was extreme and outrageous. In light of Plaintiff's indication of the existence of additional facts, in conjunction with those already alleged in the petition for damages and the amended petition for damages, Plaintiff has asserted enough factual matter to "raise a reasonable expectation that discovery will reveal evidence" that Defendant's conduct rose to the level of extreme and outrageous as required to sustain a claim for IIED.[98]

In order for the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged" as required by the standard for a motion to dismiss, Plaintiff must allege facts as to each element of the claim.[99] Defendant does not argue that Plaintiff has failed to allege the second and third elements required to sustain a claim for IIED: that (2) Plaintiff's emotional distress was severe, and that (3) Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[100]

---

[97] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[98] *Lormand*, 565 F.3d 228, 257 (5th Cir. 2009).

[99] *Twombly*, 550 U.S. at 570.

[100] *White*, 585 So. 2d at 1209.

Defendant does, however, assert that "'severe emotional distress' may be found 'where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'"[101] Accordingly, under the 'reasonable person' standard, Defendant rejects Plaintiff's assertion that "the defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered."[102]

With respect to the third element, in the amended petition for damages, Plaintiff alleges that "Defendant began a systematic harassment of [Plaintiff] with write ups of false or insignificant or incidental violations with the sole intent of intentionally creating emotional distress." In this statement, Plaintiff asserts facts supporting the allegation that Defendant acted "with the sole intent" of causing emotional distress. Thus, Defendant's conduct, as characterized by Plaintiff, is sufficient to allow the Court to draw a "reasonable inference" that Defendant desired to inflict severe emotional distress.[103]

With respect to the second element, Plaintiff does not allege any facts in the petition for damages, or the amended petition for damages, as to the nature of emotional distress Plaintiff suffered. However, in the opposition, Plaintiff asserts that he "suffered a nervous breakdown, which required hospitalization in a mental institution more than seven times," after he was subjected to "continuous harassment and abuse" by Defendant.[104] While the Court cannot look to facts outside the pleadings on a motion to dismiss,[105] these additional facts, if considered, would

---

[101] Rec. Doc. 16 at 3 (citing *Pate v. Pontchartrain Partners, LLC*, No. 13-6366, 2014 WL 5810521, at *4 (E.D. La. Nov. 7, 2014)).

[102] *Id.* (citing Rec. Doc. 13 at 13–15).

[103] *Twombly*, 550 U.S. at 570.

[104] Rec. Doc. 13 at 15.

[105] FED.R.CIV.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to ... the court, the motion must be treated as one for summary judgment under Rule 56."); *see also*

be sufficient to establish that Plaintiff's emotional distress was severe, as the facts go beyond "mere labels, legal conclusions or formulaic recitations" of the element.[106] However, these facts were not asserted in the pleadings; thus, Plaintiff has not sufficiently pled the second element of an IIED claim.

Therefore, because the petition for damages does not contain sufficient factual matter as to the second element, Plaintiff has failed to assert a claim for IIED in the complaint upon which relief can be granted. However, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[107] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend his complaint.[108]

## IV. Conclusion

Based on the foregoing, the Court has determined that Plaintiff has not stated a claim of intentional infliction of emotional distress upon which relief can be granted in the complaint, although Plaintiff adds additional facts in the opposition to Defendant's motion to dismiss. Rather than dismiss Plaintiff's claim at this time, the Court will grant Plaintiff leave to amend the complaint. If upon amendment, Plaintiff fails to provide sufficient factual support for each element

---

*Eberhardt v. Merck & Co. Inc.*, 106 F. App'x 277, 278 (5th Cir. 2004) ) ("In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings . . . ." (internal citation and quotation marks omitted)).

[106] *Iqbal*, 556 U.S. at 678.

[107] *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.1999).

[108] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir.2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir.1981)).

of the claim, upon motion by a party, the Court will dismiss the claim with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Rule 12(b)(6) Partial Motion to Dismiss[109] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend his complaint within fourteen days of this Order to cure the deficiencies noted, if possible.

**NEW ORLEANS, LOUISIANA,** this ___7th___ day of September, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[109] Rec. Doc. 9.